# In the United States Court of Federal Claims

**No. 15-1586C**
**Filed: 2/25/16**

* * * * * * * * * * * * * * * * * *

| | |
|---|---|
| **JACK E. ALLEN,** | |
| **Plaintiff,** | **Pro Se Plaintiff; In Forma Pauperis** |
| | **Application; Request for** |
| **v.** | **Appointment of Counsel; Lack of** |
| | **Subject Matter Jurisdiction** |
| **UNITED STATES,** | |
| **Defendant.** | |

* * * * * * * * * * * * * * * * * *

**Jack E. Allen,** Houtzdale, PA, pro se.

**Christopher L. Harlow,** Trial Attorney, Commercial Litigation Branch, Civil Division, United States Department of Justice, Washington, DC, for defendant. With him were **Robert E. Kirschman, Jr.,** Director, Commercial Litigation Branch, and **Benjamin C. Mizer,** Principal Deputy Assistant Attorney General, Civil Division, Washington, D.C.

## ORDER

### HORN, J.

On December 29, 2015, pro se plaintiff Jack E. Allen filed in this court a rambling and repetitive forty page complaint, along with a ten page document titled "MEMORANDUM OF LAW."[1] Plaintiff's complaint is titled: "FEDERAL TORT CLAIMS ACTION AGAINST THE UNITED STATES UNDER TITLE 28 U.S.C. § 1346 FOR CRIMES AGAINST PLAINTIFF AND FAILURE TO PREVENT SUCH VIOLATIONS OF STATE AND FEDERAL LAWS AND TO PROTECT THE RIGHTS OF THE PLAINTFF." Plaintiff begins his complaint by stating:

> THAT THE PLAINTIFF IS SUING THE UNITED STATES FOR NOMINAL, PUNITVE, [sic] CONTINUING, AND TREBLE DAMAGES IN THE AMOUNT OF $140.3 MILLION DOLLARS (ONE HUNDRED FORTY MILLION AND THREE HUNDRED THOUSAND IN UNITED STATES CURRENCY) FOR SUCH CONSTITUTIONAL RIGHTS VIOLATIONS AND SUCH DEPRIVITY OF SUCH RIGHTS AS A FREE PERSON WOULD HAVE BEARING THIS UPON SUCH FALSE IMPRISONMENT DO [sic] TO

---

[1] All capitalization and grammatical errors appear as in plaintiff's submissions.

SUCH VIOLATIONS OF BOTH STATE AND FEDERAL LAWS BY STATE AND LOCAL OFFICIALS, AS WELL AS, FEDERAL OFFICIALS TO COMMIT SUCH CONSPIRACIES TO COMMIT VIOLATIONS OF THE RICO ACTS............ [sic]

Plaintiff goes on to state that, on July 19, 1995, he was "CHARGED AND CONVICTED AND SENTENCED TO LIFE IN PRISON FOR AN ALLEGED MURDER CONCERNING HIS WIFE OF SIXTEEN YEARS." Plaintiff alleges that he was innocent of this crime and that his conviction and continued imprisonment are the result of a criminal conspiracy by certain unnamed "OFFICALS OF THE STATE AND FEDERAL GOVERNMENT."[2] In particular, plaintiff alleges that this conspiracy: faked the death of his wife "KNOWING SHE IS STILL ALIVE AND WELL, WALKING AROUND"; "FALSIFIFED" an unspecified "HOSPITAL REPORT"; produced a death certificate and an autopsy report that are "VERY FAKE AND FICTICIOUS"; allowed the crime scene to be "VIOLATED BY AN INEXPERIENCED POLICE OFFICER WITHOUT ANY SCHOOLING IN FORENSIC OR SCIENTIFIC INVESTIGATIONS OF CRIME SCENES"; did not allow plaintiff "ANY VOIR DIRE, NOR PRE-EMPATORY CHALLENGES," "TAMPERED WITH THE JURY" and "TAMPERED WITH THE DEFENSE WITNESSES" during his trial; and used other unspecified "WRONGFUL METHODS." Plaintiff appears to allege that the motive for this conspiracy was "TO KEEP THE PLAINTIFF'S WIFE ALIVE AND WELL, JUST SO SOMEONE ELSE COULD KEEP HER FOR HIMSELF FOR LIFE." Plaintiff identifies twenty-two federal criminal and tort statutes, nineteen Pennsylvania criminal statutes, and seven Amendments to the United States Constitution (in particular, the First Amendment, the Fourth Amendment, the Double Jeopardy Clause of the Fifth Amendment, the Sixth Amendment, the Eighth Amendment, the Thirteenth Amendment, and the Due Process Clause of the Fourteenth Amendment) that the alleged conspirators' actions allegedly violated. Plaintiff's "MEMORANDUM OF LAW" largely repeats the claims stated in his complaint, although it adds the allegation that "THE PLAINTIFF WAS DENIED THE SOLEMN RIGHT TO EFFECTIVE ASSISTANCE OF COUNSEL UNDER THE SIXTH AMENDMENT, U.S. CONSTITUTION" by "FORCING THE PUBLIC DEFENDERS UPON THE PLAINTIFF, TWICELY DONE IN BOTH TRIALS, AND WHERE THE WAS SO MUCH 'CONFLICT OF INTEREST' WHICH EXISTED, AND WHERE THE TRIAL JUDGE **ABUSED HIS DISCRETION**" and by "FORC[ING] PLAINTIFF TO PROCEED PRO SE." (emphasis in original).

While plaintiff states at the beginning of his complaint that he is seeking "$140.3 MILLION DOLLARS" in damages, elsewhere in the complaint he asks for a total of $140,440,000.00. In particular plaintiff alleges he is owed: $60,000,000 for "FALSE

---

[2] In a separate "**PETITION FOR FEDERAL WITNESS PROGRAM**," filed on January 21, 2016, plaintiff provides a list of "OVER 150 CONSPIRATORS (DEFENDANTS)" apparently involved in this conspiracy. (emphasis in original). They include his "alleged" deceased wife and her family, prosecutors, investigators, judges, a coroner, prosecution witnesses, doctors and nurses, police officers, a secret service agent, a pastor, a nun, and over forty-four employees of the Pennsylvania Department of Corrections, as well as a number of other individuals whose professions and relationships to the plaintiff are unclear.

IMPRISONMENT"; $20,000,000.00 for "TORTUOUS [sic] ACTS; CRUEL AND UNUSUAL PUNISHMENTS; PAIN AND SUFFERING-MENTALLY & PSYHICALLY [sic]"; $60,000,000.00 for "CONSTITUTIONAL RIGHTS VIOLATIONS; NEGLIGENT TO PREVENT WRONGFUL ACTS UNDER RICO; STATE AND FEDERAL LAWS VIOLATIONS; ACT OF CONGRESS FOR PROTECTION OF RIGHTS VIOLATIONS; GAIN OF PLAINTIFF'S WIFE BY ANY MEANS NECESSARY"; $200,000.00 for "NEGLIGENCE; DELIBERATE INDIFFERENCE; INTENTIONAL WRONGFUL ACTS; PAIN & SUFFERING; MEDICAL NEGLECT; PLRA ACT VIOLATIONS-ENACTED BY CONGRESS; DENIAL OF MEDICAL TREATEMENT"; and $240,000.00 for "LOSS OF WORK." In addition to money damages, plaintiff seeks the following relief: "THAT HE BE RELEASED FROM SUCH FALSE IMPRISONMENT IN THE COURSE OF A JURY TRIAL AGAINST THE UNITED STATES"; "THAT ALL DEFENDANTS BE ARRESTED FOR SUCH CRIMES AGAINST THE PLAINTIFF IN VIOLATION OF THE RICO ACT CONDONING 'RACKETEERING'"; "THAT HE BE PUT INTO FEDERAL PROTECTION UNDER THE WITNESS PROTECTION PROGRAM, SUPERVISED BY THE U.S. MARSHALS, AS WELL AS, THE U.S. ATTORNEY GENERAL, THE HONORABLE MS. LORETTA LYNCH"; "THAT THERE BE AN INVESTIGATION BY THE HIGHER AUTHORITIES OF SUCH LAW ENFORCMENT AGENCIES, WHO CONDUCTS SUCH INVESTIGATION INTO CRIMES BEING COMMITTED BY THESE DEFENDANTS"; and "THAT WHAT WAS TAKEN FROM HIM BY THESE DEFENDANTS, SHOULD BE TAKEN FROM THEM IN SUCH AMOUNTS OF THIS SUIT IN THE COURSE OF THEIR PROPERTIES; BANK ACCOUNTS; AND OTHER ASSETS, INSTEAD OF THE UNITED STATES PAYING ALL THE MONIES IN THIS TORT CLAIMS ACTIONABLE SUIT."

    The court recognizes that plaintiff is proceeding pro se, without the assistance of counsel. When determining whether a complaint filed by a pro se plaintiff is sufficient to invoke review by a court, pro se plaintiffs are entitled to liberal construction of their pleadings. See Haines v. Kerner, 404 U.S. 519, 520–21 (requiring that allegations contained in a pro se complaint be held to "less stringent standards than formal pleadings drafted by lawyers"), reh'g denied, 405 U.S. 948 (1972); see also Erickson v. Pardus, 551 U.S. 89, 94 (2007); Hughes v. Rowe, 449 U.S. 5, 9–10 (1980); Estelle v. Gamble, 429 U.S. 97, 106 (1976), reh'g denied, 429 U.S. 1066 (1977); Matthews v. United States, 750 F.3d 1320, 1322 (Fed. Cir. 2014); Diamond v. United States, 115 Fed. Cl. 516, 524, aff'd, 2015 WL 527500 (Fed. Cir. Feb. 10, 2015), cert. denied 135 S. Ct. 1909 (2015). "However, "[t]here is no duty on the part of the trial court to create a claim which [the plaintiff] has not spelled out in his [or her] pleading."" Lengen v. United States, 100 Fed. Cl. 317, 328 (2011) (alterations in original) (quoting Scogin v. United States, 33 Fed. Cl. 285, 293 (1995) (quoting Clark v. Nat'l Travelers Life Ins. Co., 518 F.2d 1167, 1169 (6th Cir. 1975))); see also Bussie v. United States, 96 Fed. Cl. 89, 94, aff'd, 443 F. App'x 542 (Fed. Cir. 2011); Minehan v. United States, 75 Fed. Cl. 249, 253 (2007). "While a pro se plaintiff is held to a less stringent standard than that of a plaintiff represented by an attorney, the pro se plaintiff, nevertheless, bears the burden of establishing the Court's jurisdiction by a preponderance of the evidence." Riles v. United States, 93 Fed. Cl. 163, 165 (2010) (citing Hughes v. Rowe, 449 U.S. at 9 and Taylor v. United States, 303 F.3d 1357, 1359 (Fed. Cir.) ("Plaintiff bears the burden of showing jurisdiction by a preponderance of the evidence."), reh'g and reh'g en banc denied (Fed. Cir. 2002)); see also Shelkofsky v. United States, 119 Fed. Cl. 133, 139 (2014) ("[W]hile the court may

3

excuse ambiguities in a pro se plaintiff's complaint, the court 'does not excuse [a complaint's] failures.'" (quoting Henke v. United States, 60 F.3d 795, 799 (Fed. Cir. 1995)); Harris v. United States, 113 Fed. Cl. 290, 292 (2013) ("Although plaintiff's pleadings are held to a less stringent standard, such leniency 'with respect to mere formalities does not relieve the burden to meet jurisdictional requirements.'" (quoting Minehan v. United States, 75 Fed. Cl. at 253).

It is well established that "'subject-matter jurisdiction, because it involves a court's power to hear a case, can never be forfeited or waived.'" Arbaugh v. Y & H Corp., 546 U.S. 500, 514 (2006) (quoting United States v. Cotton, 535 U.S. 625, 630 (2002)). "[F]ederal courts have an independent obligation to ensure that they do not exceed the scope of their jurisdiction, and therefore they must raise and decide jurisdictional questions that the parties either overlook or elect not to press." Henderson ex rel. Henderson v. Shinseki, 131 S. Ct. 1197, 1202 (2011); see also Gonzalez v. Thaler, 132 S. Ct. 641, 648 (2012) ("When a requirement goes to subject-matter jurisdiction, courts are obligated to consider *sua sponte* issues that the parties have disclaimed or have not presented."); Hertz Corp. v. Friend, 559 U.S. 77, 94 (2010) ("Courts have an independent obligation to determine whether subject-matter jurisdiction exists, even when no party challenges it." (citing Arbaugh v. Y & H Corp., 546 U.S. at 514)); Special Devices, Inc. v. OEA, Inc., 269 F.3d 1340, 1342 (Fed. Cir. 2001) ("[A] court has a duty to inquire into its jurisdiction to hear and decide a case." (citing Johannsen v. Pay Less Drug Stores N.W., Inc., 918 F.2d 160, 161 (Fed. Cir. 1990)); View Eng'g, Inc. v. Robotic Vision Sys., Inc., 115 F.3d 962, 963 (Fed. Cir. 1997) ("[C]ourts must always look to their jurisdiction, whether the parties raise the issue or not."). "Objections to a tribunal's jurisdiction can be raised at any time, even by a party that once conceded the tribunal's subject-matter jurisdiction over the controversy." Sebelius v. Auburn Reg'l Med. Ctr., 133 S. Ct. 817, 824 (2013); see also Arbaugh v. Y & H Corp., 546 U.S. at 506 ("The objection that a federal court lacks subject-matter jurisdiction . . . may be raised by a party, or by a court on its own initiative, at any stage in the litigation, even after trial and the entry of judgment."); Cent. Pines Land Co., L.L.C. v. United States, 697 F.3d 1360, 1364 n.1 (Fed. Cir. 2012) ("An objection to a court's subject matter jurisdiction can be raised by any party or the court at any stage of litigation, including after trial and the entry of judgment." (citing Arbaugh v. Y & H Corp., 546 U.S. at 506–07)); Rick's Mushroom Serv., Inc. v. United States, 521 F.3d 1338, 1346 (Fed. Cir. 2008) ("[A]ny party may challenge, or the court may raise sua sponte, subject matter jurisdiction at any time." (citing Arbaugh v. Y & H Corp., 546 U.S. at 506; Folden v. United States, 379 F.3d 1344, 1354 (Fed. Cir.), reh'g and reh'g en banc denied (Fed. Cir. 2004), cert. denied, 545 U.S. 1127 (2005); and Fanning, Phillips & Molnar v. West, 160 F.3d 717, 720 (Fed. Cir. 1998))); Pikulin v. United States, 97 Fed. Cl. 71, 76, appeal dismissed, 425 F. App'x 902 (Fed. Cir. 2011). In fact, "[s]ubject matter jurisdiction is an inquiry that this court must raise *sua sponte*, even where . . . neither party has raised this issue." Metabolite Labs., Inc. v. Lab. Corp. of Am. Holdings, 370 F.3d 1354, 1369 (Fed. Cir.) (citing Textile Prods., Inc. v. Mead Corp., 134 F.3d 1481, 1485 (Fed. Cir.), reh'g denied and en banc suggestion declined (Fed. Cir.), cert. denied, 525 U.S. 826 (1998)), reh'g and reh'g en banc denied (Fed. Cir. 2004), cert. granted in part sub. nom Lab. Corp. of Am. Holdings v. Metabolite Labs., Inc., 546 U.S. 975 (2005), cert. dismissed as improvidently granted, 548 U.S. 124 (2006); see also Avid Identification Sys., Inc. v. Crystal Import Corp., 603 F.3d 967, 971 (Fed. Cir.) ("This court

4

must always determine for itself whether it has jurisdiction to hear the case before it, even when the parties do not raise or contest the issue."), reh'g and reh'g en banc denied, 614 F.3d 1330 (Fed. Cir. 2010), cert. denied, 131 S. Ct. 909 (2011).

Pursuant to the Rules of the Court of Federal Claims (RCFC) and the Federal Rules of Civil Procedure, a plaintiff need only state in the complaint "a short and plain statement of the grounds for the court's jurisdiction," and "a short and plain statement of the claim showing that the pleader is entitled to relief." RCFC 8(a)(1), (2) (2015); Fed. R. Civ. P. 8(a)(1), (2) (2016); see also Ashcroft v. Iqbal, 556 U.S. 662, 677–78 (2009) (citing Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555–57, 570 (2007)). "Determination of jurisdiction starts with the complaint, which must be well-pleaded in that it must state the necessary elements of the plaintiff's claim, independent of any defense that may be interposed." Holley v. United States, 124 F.3d 1462, 1465 (Fed. Cir.) (citing Franchise Tax Bd. v. Constr. Laborers Vacation Trust, 463 U.S. 1 (1983)), reh'g denied (Fed. Cir. 1997); see also Klamath Tribe Claims Comm. v. United States, 97 Fed. Cl. 203, 208 (2011); Gonzalez-McCaulley Inv. Grp., Inc. v. United States, 93 Fed. Cl. 710, 713 (2010). "Conclusory allegations of law and unwarranted inferences of fact do not suffice to support a claim." Bradley v. Chiron Corp., 136 F.3d 1317, 1322 (Fed. Cir. 1998); see also McZeal v. Sprint Nextel Corp., 501 F.3d 1354, 1363 n.9 (Fed. Cir. 2007) (Dyk, J., concurring in part, dissenting in part) (quoting C. Wright and A. Miller, Federal Practice and Procedure § 1286 (3d ed. 2004)). "A plaintiff's factual allegations must 'raise a right to relief above the speculative level' and cross 'the line from conceivable to plausible.'" Three S Consulting v. United States, 104 Fed. Cl. 510, 523 (2012) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. at 555), aff'd, 562 F. App'x 964 (Fed. Cir.), reh'g denied (Fed. Cir. 2014). As stated in Ashcroft v. Iqbal, "[a] pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.' 550 U.S. at 555. Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" Ashcroft v. Iqbal, 556 U.S. at 678 (quoting Bell Atl. Corp. v. Twombly, 550 U.S. at 555).

The Tucker Act grants jurisdiction to this court as follows:

> The United States Court of Federal Claims shall have jurisdiction to render judgment upon any claim against the United States founded either upon the Constitution, or any Act of Congress or any regulation of an executive department, or upon any express or implied contract with the United States, or for liquidated or unliquidated damages in cases not sounding in tort.

28 U.S.C. § 1491(a)(1) (2012). As interpreted by the United States Supreme Court, the Tucker Act waives sovereign immunity to allow jurisdiction over claims against the United States (1) founded on an express or implied contract with the United States, (2) seeking a refund from a prior payment made to the government, or (3) based on federal constitutional, statutory, or regulatory law mandating compensation by the federal government for damages sustained. See United States v. Navajo Nation, 556 U.S. 287, 289–90 (2009); United States v. Mitchell, 463 U.S. 206, 216 (1983); see also Greenlee Cnty., Ariz. v. United States, 487 F.3d 871, 875 (Fed. Cir.), reh'g and reh'g en banc denied

(Fed. Cir. 2007), cert. denied, 552 U.S. 1142 (2008); Palmer v. United States, 168 F.3d 1310, 1314 (Fed. Cir. 1999).

"Not every claim invoking the Constitution, a federal statute, or a regulation is cognizable under the Tucker Act. The claim must be one for money damages against the United States . . . ." United States v. Mitchell, 463 U.S. at 216; see also United States v. White Mountain Apache Tribe, 537 U.S. 465, 472 (2003); Smith v. United States, 709 F.3d 1114, 1116 (Fed. Cir.), cert. denied, 134 S. Ct. 259 (2013); RadioShack Corp. v. United States, 566 F.3d 1358, 1360 (Fed. Cir. 2009); Rick's Mushroom Serv., Inc. v. United States, 521 F.3d at 1343 ("[P]laintiff must . . . identify a substantive source of law that creates the right to recovery of money damages against the United States."); Golden v. United States, 118 Fed. Cl. 764, 768 (2014). In Ontario Power Generation, Inc. v. United States, the United States Court of Appeals for the Federal Circuit identified three types of monetary claims for which jurisdiction is lodged in the United States Court of Federal Claims. The court wrote:

> The underlying monetary claims are of three types. . . . First, claims alleging the existence of a contract between the plaintiff and the government fall within the Tucker Act's waiver. . . . Second, the Tucker Act's waiver encompasses claims where "the plaintiff has paid money over to the Government, directly or in effect, and seeks return of all or part of that sum." Eastport S.S. [Corp. v. United States, 178 Ct. Cl. 599, 605–06,] 372 F.2d [1002,] 1007-08 [(1967)] (describing illegal exaction claims as claims "in which 'the Government has the citizen's money in its pocket'" (quoting Clapp v. United States, 127 Ct. Cl. 505, 117 F. Supp. 576, 580 (1954)) . . . . Third, the Court of Federal Claims has jurisdiction over those claims where "money has not been paid but the plaintiff asserts that he is nevertheless entitled to a payment from the treasury." Eastport S.S., 372 F.2d at 1007. Claims in this third category, where no payment has been made to the government, either directly or in effect, require that the "particular provision of law relied upon grants the claimant, expressly or by implication, a right to be paid a certain sum." Id.; see also [United States v. ]Testan, 424 U.S. [392,] 401-02 [1976] ("Where the United States is the defendant and the plaintiff is not suing for money improperly exacted or retained, the basis of the federal claim-whether it be the Constitution, a statute, or a regulation-does not create a cause of action for money damages unless, as the Court of Claims has stated, that basis 'in itself . . . can fairly be interpreted as mandating compensation by the Federal Government for the damage sustained.'" (quoting Eastport S.S., 372 F.2d at 1009)). This category is commonly referred to as claims brought under a "money-mandating" statute.

Ontario Power Generation, Inc. v. United States, 369 F.3d 1298, 1301 (Fed. Cir. 2004); see also Twp. of Saddle Brook v. United States, 104 Fed. Cl. 101, 106 (2012).

To prove that a statute or regulation is money-mandating, a plaintiff must demonstrate that an independent source of substantive law relied upon "'can fairly be

interpreted as mandating compensation by the Federal Government.'" United States v. Navajo Nation, 556 U.S. at 290 (quoting United States v. Testan, 424 U.S. 392, 400 (1976)); see also United States v. White Mountain Apache Tribe, 537 U.S. at 472; United States v. Mitchell, 463 U.S. at 217; Blueport Co., LLC v. United States, 533 F.3d 1374, 1383 (Fed. Cir. 2008), cert. denied, 555 U.S. 1153 (2009). The source of law granting monetary relief must be distinct from the Tucker Act itself. See United States v. Navajo Nation, 556 U.S. at 290 (The Tucker Act does not create "substantive rights; [it is simply a] jurisdictional provision[] that operate[s] to waive sovereign immunity for claims premised on other sources of law (e.g., statutes or contracts)."). "'If the statute is not money-mandating, the Court of Federal Claims lacks jurisdiction, and the dismissal should be for lack of subject matter jurisdiction.'" Jan's Helicopter Serv., Inc. v. Fed. Aviation Admin., 525 F.3d 1299, 1308 (Fed. Cir. 2008) (quoting Greenlee Cnty., Ariz. v. United States, 487 F.3d at 876); Fisher v. United States, 402 F.3d 1167, 1173 (Fed. Cir. 2005) (The absence of a money-mandating source is "fatal to the court's jurisdiction under the Tucker Act."); Peoples v. United States, 87 Fed. Cl. 553, 565–66 (2009).

As indicated by the title of his complaint, plaintiff's central claim appears to be that the alleged actions of the alleged conspiracy against him constitute actionable tort or torts against him. Indeed, throughout his complaint, plaintiff repeatedly characterizes his action as a "TORT CLAIM." Further, in his "JURISDICTIONAL STATEMENT," plaintiff states that jurisdiction over his case is proper because:

> "THE UNITED STATES COURT OF FEDERAL CLAIMS HAS JURISDICTIONAL STATUS OVER FEDERAL TORT CLAIMS ACTION AGAINST THE UNITED STATES WHEN THE UNITED STATES BECOMES A DEFENDANT UNDER TITLE 28 U.S.C. § 1346, AND IS TOTALLY RESPONSIBLE AND LIABLE UNDER TITLE 28 U.S.C. § 2674. THTA [sic] SUCH TORT CLAIM ACTION COMES UNDER TITLE 28 U.S.C. § 2671

Contrary to plaintiff's assertion, this court does not have jurisdiction to hear tort claims against the United States. See 28 U.S.C. § 1491(a)(1) ("The United States Court of Federal Claims shall have jurisdiction . . . in cases not sounding in tort."); see also Keene Corp. v. United States, 508 U.S. 200, 214 (1993) ("[T]ort cases are outside the jurisdiction of the Court of Federal Claims today."); Brown v. United States, 105 F.3d 621, 623 (Fed. Cir. 1997) ("The Court of Federal Claims is a court of limited jurisdiction. It lacks jurisdiction over tort actions against the United States."). Indeed, the alleged jurisdictional provision cited by plaintiff, 28 U.S.C. § 1346, makes tort claims against the United States the exclusive purview of the United States District Courts. See 28 U.S.C. § 1346(b)(1); see also Brown v. United States, 74 Fed. Cl. 546, 549 (2006) ("[T]he FTCA [Federal Tort Claims Act, 28 U.S.C. § 1346(b)(1)] grants exclusive jurisdiction to the United States federal district courts regarding tort claims against the United States Government."). Therefore, to the extent that plaintiff is attempting to bring tort claims as a result of the alleged conspiracy, this court lacks jurisdiction to hear them.

Nor does the court have jurisdiction to hear plaintiff's claims based on any of the alleged violations of state and federal criminal statutes or the United States Constitution

that plaintiff asserts were the result of the alleged conspiracy. The United States Court of Federal Claims does not possess criminal jurisdiction and, thus, does not have jurisdiction to hear the various state and federal criminal claims alleged by plaintiff. See Joshua v. United States, 17 F.3d 378, 379 (Fed. Cir. 1994) (noting the "specific civil jurisdiction" of the United States Court of Federal Claims); see also Hampel v. United States, 97 Fed. Cl. 235, 238 (2011); Mendes v. United States, 88 Fed. Cl. 759, 762, appeal dismissed, 375 F. App'x 4 (Fed. Cir. 2009); Hufford v. United States, 87 Fed. Cl. 696, 702 (2009); Matthews v. United States, 72 Fed. Cl. 274, 282 (finding that the United States Court of Federal Claims lacked jurisdiction to consider plaintiff's criminal claims), recons. denied, 73 Fed. Cl. 524 (2006). Additionally, the constitutional provisions plaintiff alleges were violated by the alleged conspiracy, the First Amendment, the Fourth Amendment, the Double Jeopardy Clause of the Fifth Amendment, the Sixth Amendment, the Eighth Amendment, the Thirteenth Amendment, and the Due Process Clause of the Fourteenth Amendment, do not obligate the United States to pay money damages and thus cannot serve as the basis for jurisdiction in this court. See United States v. Connolly, 716 F.2d 882, 887 (Fed. Cir. 1983) ("We agree with the Court of Claims that the first amendment, standing alone, cannot be so interpreted to command the payment of money."); Dupre v. United States, 229 Ct. Cl. 706, 706 (1981) ("[T]he fourth and sixth amendments do not in themselves obligate the United States to pay money damages; and, therefore, we have no jurisdiction over such claims."); James v. Caldera, 159 F.3d 573, 581 (Fed. Cir. 1998) ("However, it is well established that the Court of Federal Claims lacks jurisdiction over such claims[based on the Due Process and the Double Jeopardy Clauses of the Fifth Amendment] because neither of the two clauses is a money-mandating provision.") (citing LeBlanc v. United States, 50 F.3d 1025, 1028 (Fed. Cir. 1995); Deggins v. United States, 39 Fed. Cl. 617, 621 (1997), appeal dismissed, 152 F.3d 949 (Fed. Cir. 1998)); Trafny v. United States, 503 F.3d 1339, 1340 (Fed. Cir. 2007) ("The Court of Federal Claims does not have jurisdiction over claims arising under the Eighth Amendment, as the Eighth Amendment 'is not a money-mandating provision.'" (quoting Edelmann v. United States, 76 Fed. Cl. 376, 383 (2007)); Carter v. United States, 228 Ct. Cl. 898, 900 (1981) (holding that the Fifth and Thirteenth Amendment "do not grant a right to the payment of money for their violation, absent a taking of private property for public use."); LeBlanc v. United States, 50 F.3d at 1028 (holding that the Due Process Clauses of the Fifth and Fourteenth Amendments are not "a sufficient basis for jurisdiction because they do not mandate payment of money by the government") (citing Carruth v. United States, 224 Ct. Cl. 422, 445 (1980)). Therefore, this court lacks jurisdiction over any claims that plaintiff's complaint raises, even when construed liberally.

Finally, the court notes that, even were plaintiff's claims to otherwise fall within this court's jurisdiction, which they do not, the claims would be independently barred by the statute of limitations. Pursuant to 28 U.S.C. § 2501 (2012), suits against the United States are subject to a six-year statute of limitations. According to 28 U.S.C. § 2501:

> Every claim of which the United States Court of Federal Claims has jurisdiction shall be barred unless the petition thereon is filed within six years after such claim first accrues. . . . A petition on the claim of a person under legal disability or beyond the seas at the time the claim accrues may be filed within three years after the disability ceases.

Id. "The six-year statute of limitations set forth in section 2501 is a jurisdictional requirement for a suit in the Court of Federal Claims." John R. Sand v. Gravel Co. v. United States, 457 F.3d 1345, 1354 (Fed. Cir.), reh'g en banc denied (Fed. Cir. 2006), aff'd, 552 U.S. 130 (2008). The United States Court of Appeals for the Federal Circuit has indicated that a claim accrues "'when all events have occurred to fix the Government's alleged liability, entitling the claimant to demand payment and sue here for his money.'"" San Carlos Apache Tribe v. United States, 639 F.3d 1346, 1358-59 (Fed. Cir.) (quoting Samish Indian Nation v. United States, 419 F.3d 1355, 1369 (Fed. Cir. 2005) (quoting Martinez v. United States, 333 F.3d 1295, 1303 (Fed. Cir. 2003), cert. denied, 540 U.S. 1177 (2004))), reh'g en banc denied (Fed. Cir. 2011); see also FloorPro, Inc. v. United States, 680 F.3d 1377, 1381 (Fed. Cir. 2012); Martinez v. United States, 333 F.3d at 1303 ("A cause of action cognizable in a Tucker Act suit accrues as soon as all events have occurred that are necessary to enable the plaintiff to bring suit, i.e., when 'all events have occurred to fix the Government's alleged liability, entitling the claimant to demand payment and sue here for his money.'" (quoting Nager Elec. Co. v. United States, 177 Ct. Cl. 234, 240, 368 F.2d 847, 851 (1966), motion denied, 184 Ct. Cl. 390, 396 F.2d 977 (1968)); Hopland Band of Pomo Indians v. United States, 855 F.2d 1573, 1577 (Fed. Cir. 1988); see also Brizuela v. United States, 103 Fed. Cl. 635, 639, aff'd, 492 F. App'x 97 (Fed. Cir. 2012), cert. denied 133 S. Ct. 1645 (2013). A Judge of the United States Court of Federal Claims has noted that:

> It is well-established that a claim accrues under section 2501 "when 'all events have occurred to fix the Government's alleged liability, entitling the claimant to demand payment and sue here for his money.'" Martinez v. United States, 333 F.3d 1295, 1303 (Fed. Cir. 2003) (en banc), cert. denied, 540 U.S. 1177 (2004) (quoting Nager Elec. Co. v. United States, 368 F.2d 847, 851 (Ct. Cl. 1966)); see also Samish [Indian Nation v. United States], 419 F.3d [1355,] 1369 [(2005)]. Because, as noted, this requirement is jurisdictional, plaintiff bears the burden of demonstrating that its claims were timely. See Alder Terrace, Inc. v. United States, 161 F.3d 1372, 1377 (Fed. Cir. 1998); Entines v. United States, 39 Fed. Cl. 673, 678 (1997), aff'd, 185 F.3d 881 (Fed. Cir.), cert. denied, 526 U.S. 1117 (1999); see also John R. Sand & Gravel Co. v. United States, 457 F.3d 1345, 1362 (Fed. Cir. 2006) (Newman, J., dissenting); Reynolds v. Army & Air Force Exch. Serv., 846 F.2d 746, 748 (Fed. Cir. 1988).

Parkwood Assocs. Ltd. P'ship v. United States, 97 Fed. Cl. 809, 813-14 (2011), aff'd, 465 F. App'x 952 (Fed. Cir. 2012); see also Klamath Tribe Claims Comm. v. United States, 97 Fed. Cl. at 209 (citing Alder Terrace, Inc. v. United States, 161 F.3d 1372, 1377 (Fed. Cir. 1998)). Accrual of a claim is "'determined under an objective standard'" and plaintiff does not have to possess actual knowledge of all the relevant facts in order for a cause of action to accrue. FloorPro, Inc. v. United States, 680 F.3d at 1381 (quoting Fallini v. United States, 56 F.3d 1378, 1380 (Fed. Cir. 1995), cert. denied, 517 U.S. 1243 (1996)). Plaintiff states that that he was convicted of murdering his wife on July 19, 1995. The wrongful acts plaintiff alleges were committed by the alleged conspiracy all took place before or during his trial for murdering his wife, and, thus, must have taken place on or before July 19, 1995. Because this is more than six years prior to the date plaintiff filed

his complaint on December 29, 2015, plaintiff's claims are barred by the statute of limitations set forth in 28 U.S.C. § 2501.

After filing his complaint, plaintiff filed four motions in this court on January 21, 2016: a motion for leave to proceed in forma pauperis; a motion for appointment of an attorney; a motion for transportation to any hearings or proceedings in this court; and a "**PETITION FOR FEDERAL WITNESS PROGRAM**," in which plaintiff requests to be "TRANSFERRED TO A FEDERAL PRISON CLOSEST TO THIS HONORABLE COURT." (emphasis in original). In his motion to proceed in forma pauperis, Mr. Allen indicates that he is incarcerated, that he is not employed, that he does not have any cash or money in any checking, savings, or other accounts, and that he does not own any property. As is required for all prisoners by 28 U.S.C. § 1915(a)(2) (2012), plaintiff includes a trust fund account statement covering the six-month period prior to the filing of his complaint along with his motion. The standard in 28 U.S.C. § 1915(a)(1) for in forma pauperis eligibility is "unable to pay such fees or give security therefor." Determination of what constitutes "unable to pay" or unable to "give security therefor," and, therefore, whether to allow a plaintiff to proceed in forma pauperis is left to the discretion of the presiding judge, based on the information submitted by the plaintiff or plaintiffs. See, e.g., Rowland v. Cal. Men's Colony, Unit II Men's Advisory Council, 506 U.S. 194, 217–18 (1993); Fuentes v. United States, 100 Fed. Cl. 85, 92 (2011). In Fiebelkorn v. United States, the United States Court of Federal Claims indicated:

> [T]he threshold for a motion to proceed in forma pauperis is not high: The statute requires that the applicant be "unable to pay such fees." 28 U.S.C. § 1915(a)(1). To be "unable to pay such fees" means that paying such fees would constitute a serious hardship on the plaintiff, not that such payment would render plaintiff destitute.

Fiebelkorn v. United States, 77 Fed. Cl. 59, 62 (2007); see also Hayes v. United States, 71 Fed. Cl. 366, 369 (2006). Although Mr. Allen's income level may qualify him for in forma pauperis status, the issue is moot because, as discussed above, his complaint is being dismissed for lack of jurisdiction. See 28 U.S.C. § 1915(e)(2). Plaintiff's motion to appoint counsel also is moot because the court has dismissed plaintiff's complaint for lack of jurisdiction. Finally, plaintiff's motion for transportation and his "**PETITION FOR FEDERAL WITNESS PROGRAM**" are moot for the same reason. (emphasis in original).

On February 19, 2016, plaintiff also filed a "MOTION FOR ISSUANCE OF PROTECTIVE ORDERS UNDER RCFC, RULE 26(c)," in which he requests "PROTECTIVE ORDERS PERTAINING TO SIX BOXES OF DOCUMENTARY EVIDENCE; GRAPHS, AND DRAWINGS; [and] TRANSCRIPTS AND OTHER EVIDENCE." The above-captioned case is not currently in discovery and is dismissed by this Order. Plaintiff's most recent motion, therefore, is moot.[3]

---

[3] The court notes that, in addition to the above-captioned case, plaintiff has filed at least twenty-two civil actions and petitions for writs habeas corpus in federal court since 1996. Twenty-one of these cases were filed in the United States District Court for the Western

## CONCLUSION

The court lacks jurisdiction over any of the claims raised in plaintiff's complaint. Moreover, plaintiff's claims are barred by the applicable statute of limitations. Plaintiff's complaint, therefore, is **DISMISSED**. The Clerk shall enter **JUDGMENT** consistent with this Order.

**IT IS SO ORDERED.**

**MARIAN BLANK HORN**
Judge

---

District of Pennsylvania and one was filed in the United States Court of Federal Claims. All of the cases were either dismissed, denied, or withdrawn by the plaintiff. See Allen v. United States, No. 01-217 (Fed. Cl. April 26, 2001) (dismissing complaint); Allen v. Pennsylvania, No. 15-79 (W.D. Pa. May 21, 2015) (denying petition); Allen v. Pennsylvania, No. 14-52 (W.D. Pa. May 5, 2014) (denying petition); Stull, et al. v. 1.6 Million Electors, No. 03-72 (W.D. Pa. May 15, 2013) (granting motion to withdraw complaint); Allen v. Naji, et al., No. 10-152 (W.D. Pa. Aug. 31, 2010) (denying petition); Allen v. Patrick, et al., No. 07-323 (W.D. Pa. Mar. 19, 2010) (denying petition); Allen v. Beard, et al., No. 08-100 (W.D. Pa. June 5, 2008) (granting motion to withdraw complaint); Allen v. Patrick, et al., No. 04-225 (W.D. Pa. Aug. 10, 2006) (denying petition); Allen v. Smith, et al., No. 02-54 (W.D. Pa. Aug. 20, 2002) (dismissing complaint for failure to state a claim); Allen v. Reilly, et al., No. 00-260 (W.D. Pa. Mar. 14, 2001) (dismissing complaint); Allen v. McCollough, et al., No. 98-111 (W.D. Pa. Oct. 18, 2000) (denying petition); Allen v. McCollough, et al., No. 99-46 (W.D. Pa. June 29, 1999) (dismissing complaint); Allen v. Clearfield Cty. Children, Youth and Family Serv., No. 99-1 (W.D. Pa. Jan. 29, 1999) (dismissing complaint); Allen v. McCollough, et al., No. 98-291 (W.D. Pa. Jan. 29, 1999) (dismissing complaint); Allen v. Brown CO-I, et al., No. 98-153 (W.D. Pa. Dec. 22, 1998) (dismissing complaint for failure to state a claim); Allen v. McCollough, et al., No. 98-208 (W.D. Pa. Nov. 10, 1998) (dismissing complaint); Allen v. Reilly, No. 98-97 (W.D. Pa. Dec. 22, 1998) (dismissing complaint for failure to state a claim); Allen v. Mazurkiewicz, et al., No. 97-1322 (W.D. Pa. May 19, 1998) (dismissing complaint); Allen v. Allenbaugh, No. 97-104 (W.D. Pa. Aug. 12, 1997) (dismissing complaint for failure to state a claim); Allen v. Mazurkiewicz, No. 97-124 (W.D. Pa. Aug. 12, 1997) (dismissing complaint for failure to state a claim); Allen v. Pennsylvania, No. 96-249 (W.D. Pa. Dec. 19, 1996) (denying petition); Allen v. Pennsylvania, No. 96-173 (W.D. Pa. Oct. 30, 1996) (denying petition).